576    HARTFORD AND TOLLAND.

Keeney & Wood Manf. Co. *v.* Union Manf. Co.

## KEENEY AND WOOD MANUFACTURING COMPANY AND ANOTHER *vs.* THE UNION MANUFACTURING COMPANY.

The owners of an upper mill, whose business required the running of their mill only by day, detained the water of the stream during the night, such detention and the larger discharge during the day causing serious damage to the owners of a lower mill, whose business required the running of their mill both night and day. The lower privilege was occupied several years before the upper, and after the upper mill was built the water was for several years allowed to flow during the night, and the lower mill had used it by night and by day. Upon a petition by the lower mill owners against the upper, for an injunction against the detention of the water by night, it was held—

1. That the petitioners had acquired no superior rights by their earlier occupation, or by their use of the water by night, so long as they had exercised no rights greater than such as belonged to them as riparian proprietors ; the full flow of the stream being nothing beyond such right.

2. That all that the petitioners were entitled to was a reasonable use of the stream against an unreasonable use or detention by the respondents ; that the question was whether the respondents had acted unreasonably in detaining the water ; and that the burden of proof on this subject was on the petitioners.

The right in such a case of the upper mill owner to make the stream useful to him by detaining the water during the night, is of the same quality as the right of the lower mill owner to take the benefit of the constant flow. In deciding between these conflicting rights, there are to be considered— 1. The custom of the country as to the running of mills. 2. The local custom, if there be one. 3. What general rule will best secure the entire stream to useful purposes. 4. Whether the detention of the water is necessarily an injury to the lower mill, and whether the apparent injury is not caused by the insufficiency of its own privilege.

The maxim "*aqua currit et currere debet*" is applicable rather to the matter of the diversion of a stream and to the ordinary rights of riparian proprietors as such, than to the case of mill owners, who have a right to make a reasonable detention of the water by dams for the purposes of their mills.

PETITION for an injunction, brought to the Superior Court in Hartford County, and reserved, upon facts found by a committee, for the advice of this court. The case is sufficiently stated in the opinion.

*Hyde* and *Buck,* for the petitioners, cited 2 Kent. Com., 439 ; *Tucker* v. *Jewett,* 11 Conn., 311, 317, 324 ; *Ingraham* v. *Hutchinson,* 2 id., 584 ; *Mason* v. *Hill,* 5 Barn. &

Adol., 1 ; *Bealey* v. *Shaw*, 6 East, 208 ; *Brown* v. *Best*, 1 Wils., 174 ; *Saunders* v. *Newman*, 1 Barn. & Adol., 258, 262 ; *Tyler* v. *Wilkinson*, 4 Mason, 396, 400 ; *Cary* v. *Daniels*, 8 Met., 466, 478 ; *Ortman* v. *Dixon*, 13 Cal., 38 ; *Wheatley* v. *Chrisman*, 24 Penn. S. R., 298, 302 ; *Gillett* v. *Johnson*, 30 Conn., 183 ; *Pollitt* v. *Long*, 58 Barb., 20, 34 ; *Sackrider* v. *Beers*, 10 Johns., 241 ; *Merritt* v. *Brinkerhoff*, 17 id., 306 ; *Wentworth* v. *Poor*, 38 Maine, 243 ; *Davis* v. *Getchell*, 50 id., 604 ; *Clark* v. *Rockland Water Power Co.*, 52 id., 78 ; *Dilling* v. *Murray*, 6 Ind., 324 ; *Shears* v. *Wood*, 7 J. B. Moore, 345 ; *Chandler* v. *Howland*, 7 Gray, 348 ; Angell on Watercourses, 3d ed., § 115.

*N. Shipman* and *Robinson*, for the respondents, cited *Belknap* v. *Trimble*, 3 Paige, 577 ; *Tyler* v. *Wilkinson*, 4 Mason, 396 ; *Tucker* v. *Jewett*, 11 Conn., 311 ; *Parker* v. *Hotchkiss*, 25 id., 321 ; *Gould* v. *Boston Duck Co.*, 13 Gray, 442 ; *Brace* v. *Yale*, 10 Allen, 441 ; *Palmer* v. *Mulligan*, 3 Caines, 307 ; *Thurber* v. *Martin*, 2 Gray, 394 ; *Hartzall* v. *Sill*, 12 Penn. S. R., 248 ; *Sampson* v. *Hoddinott*, 1 Com. Bench, *N. S.*, 590 ; *Mason* v. *Hill*, 5 Barn. & Adol., 1 ; *Arkwright* v. *Gell*, 5 Mees. & Wels., 202 ; *Cary* v. *Daniels*, 8 Met., 466 ; *King* v. *Tiffany*, 9 Conn., 166 ; *Twiss* v. *Baldwin*, id., 306 ; *Wadsworth* v. *Tillotson*, 15 id., 366 ; *Barrett* v. *Parsons*, 10 Cush., 367 ; *Springfield* v. *Harris*, 4 Allen, 494 ; *Haskins* v. *Haskins*, 9 Gray, 390 ; *Pitts* v. *Lancaster Mills*, 13 Met., 156 ; *Hetrich* v. *Deachler*, 6 Barr, 32 ; *Hoy* v. *Sterret*, 2 Watts, 327 ; *Clinton* v. *Meyers*, 46 N. York, 511 ; *Davis* v. *Getchell*, 50 Maine, 602 ; *Jacobs* v. *Allard*, 42 Verm., 303 ; Angell on Watercourses, § 119.

SEYMOUR, J.  The plaintiffs own paper mills on the Hockanum river, and find it necessary for the successful prosecution of their business to run their mills during the entire twenty-four hours of the day.  The defendant company owns a cotton factory situate on the same river, about a fourth of a

mile above the plaintiffs' mills, and the defendants run their factory during the day only, from six o'clock in the morning until six at night, and find it necessary for the successful prosecution of their business to detain the water of the river during the night, and they do thus detain it by means of a dam of such height that at night in times of drought very little water escapes from it.

All the parties depend mainly upon the power of the stream to drive their machinery. Steam power is, however, used as auxiliary to the water power by the defendants and also by the mill of the plaintiff Adams.

The plaintiffs preferred their bill in equity to the Superior Court, complaining that the defendants by means of their dam have wrongfully detained the water so as to prevent the plaintiffs from having it as it was accustomed to flow and ought to flow during the night season, and so as in the daytime to be let down in greater quantities than they can advantageously use it in their mills ; and praying for an injunction.

The Superior Court referred the case to a committee, who has made an elaborate report, which is accepted ; and the question is reserved for our advice what decree shall be passed.

For the full understanding of all parts of the case reference must be had to the report itself ; but it will be easy as we pass along to state enough of it to show on what grounds we proceed in coming to the result we have reached.

The committee concludes his report thus : " The respondents have never by their use and detention of the water since the drought had a purpose of injuring the petitioners. They have not acted maliciously or wantonly, but have acted with sole regard to the most efficient service of their own mills. Their action has been prudent and reasonable, provided, as they claim, they are under no obligation to regard the necessities of the petitioners to run their mills at night, if by so doing they will deprive themselves of what is needful for the efficient running of their own mills by day

without resort to steam. If, on the contrary, as the petitioners claim, the latter are entitled to have the water flow at night as it customarily did before the stone dam was built, in order to enable the petitioners to run their mills at night, as before, then the increased detention by the respondents is unreasonable. It occasions, and is likely to occasion, a continuous substantial damage to the petitioners, as compared with the former practice. The respondents have more important business and investments in their concern than either, perhaps both, the petitioners ; very much more than have the Keeney & Wood company. If the respondents are entitled to hold the water nights to use in the day time, as against night work of the petitioners, their mills are adapted to the size and capacity of the stream to run them, and their detention of the water reasonable, for otherwise they must resort to steam as an auxiliary power at an increased expense. The petitioner Adams now has a steam engine of one hundred and fifty horse power, and both he and the respondents have steam power adequate to their necessities, whatever be the right as to the detention of the water. It is, as between them, a question as to which shall be at an increase of expense in using steam. The Keeney & Wood mill has no steam power, nor any need of it with the water allowed to run as before the respondents built their stone dam."

The principal question in the case then is, whether the petitioners are entitled to have the water flow at night as it customarily did before the stone dam was built, in order to enable the plaintiffs to run their mills at night as before.

Paper mills have been in existence on the plaintiffs' privileges from about 1816, and running night and day since about 1823. A cotton mill running only in the day-time has been in existence on the defendants' privilege since about 1826. The defendants have frequently rebuilt their dam, and from time to time added to its height, and by shutting their gates at night the flow of the stream was frequently interrupted so as to cause more or less interference with the running of the petitioners at night. In 1867 the defendants built the stone dam complained of, by which the water is de-

tained at night considerably more than it ever before had been.

The plaintiffs, in their brief, claim that they are entitled by such user as is evidence of a grant, to have the water flow at night as it did before the stone dam was built. But it is not claimed that they have ever exercised any rights other or greater than such as belonged to them as riparian proprietors. So long as the defendants had no occasion to detain the water at night, the plaintiffs as riparian owners below were entitled to the uninterrupted flow of the stream by night and by day, and under those circumstances, that being their right, by the exercise of it they could acquire no right to such uninterrupted flow, if afterwards the defendants had occasion to detain more of the water of the stream than they before had done. Nor on the other hand do the defendants lose any of their natural proprietary rights by allowing the water to flow past their mill without interruption, or with only a partial interruption. In order to maintain their proprietary rights they are not obliged to detain more water than they have immediate use for. When the defendants have occasion to detain more water they may do so, keeping within the bounds of reasonable use, and the fact that they have heretofore allowed the water to pass by them without detaining or using it to the full extent of their right, in no manner impairs their present right to its full enjoyment.

These points were so fully considered and firmly settled in the case of *Parker* v. *Hotchkiss*, 25 Conn. R., 321, that this claim of the plaintiffs, though it appears on their brief, was not insisted on in the argument.

The plaintiffs also founded a claim in favor of the rights they assert, on certain conversations which took place between the parties during the building of the respondents' dam. We think these conversations create no estoppel, and certainly confer no rights.

The rights of the parties seem therefore to resolve themselves into their natural rights as riparian proprietors, and all that the plaintiffs are entitled to is a reasonable use of the

stream, against an unreasonable use or detention of it by the defendants.

It is settled law that a question of this kind is one of fact, to be decided upon all the circumstances of each particular case, and in order to authorize us to grant the plaintiffs' bill it must appear by the direct finding of the committee, or as matter of legal inference from the facts found, that the detention by the defendants was and is unreasonable. Upon this vital point of the case the committee makes merely a hypothetical finding, which has been already given at length, and which on examination certainly does not expressly find the fact in favor of the plaintiffs. The increased detention of the water by the defendants' stone dam is found to be unreasonable " if the petitioners are entitled to have the water flow at night as it customarily did before that dam was built, in order to enable the petitioners to run their mill at night as before." We have already seen that the plaintiffs are not so entitled by grant, or by such user as furnishes evidence of a grant.

The question then arises, are the plaintiffs so entitled upon any other facts found by the committee. They insist that they are. They say that the committee finds that their mills are adapted to the size and capacity of the stream, and that they have heretofore enjoyed the flow of the stream night and day without any material interruption from the defendants above, and that the defendants do now, more than they have formerly done, detain and interrupt the current. The plaintiffs therefore claim that they have rights by virtue of *prior appropriation* of the surplus water of the stream to a useful purpose. This claim has countenance in the early cases, and so late as 8 Metcalf's Reports, 478, Judge SHAW says : " Although the proprietor above might in the first instance have raised his dam higher, keeping, within the limits of a reasonable use, yet after such appropriation by the proprietor below he cannot raise his dam and take such surplus, because as to that the lower proprietor has acquired a prior right." A case in 13 California Reports, 38, is also cited by the plaintiffs in support of this claim, but on examination of that case it appears to be the law of California

that if one first diverts the water of a stream from its natural channel and appropriates it to a useful purpose, he acquires a right to continue the diversion to the prejudice of riparian proprietors below who may afterwards desire to use the stream. That case rests upon the peculiar law of that state, which in this respect differs wholly from our law.

The doctrine announced by Judge SHAW in the 8th Metcalf appears not now to be the law of Massachusetts. *Gould* v. *Boston Duck Company*, 13 Gray, 442. The case of *Parker* v. *Hotchkiss*, 25 Conn. R., 321, shows that it is not the law of Connecticut. In *Parker* v. *Hotchkiss* the plaintiff had made precisely the prior appropriation which the plaintiffs have made in this case, and had enjoyed it for more than fifteen years, and made the same claim which is now under consideration. Judge WAITE, giving the opinion of the court, says : "It is difficult to see on what ground this claim can be maintained so long as the plaintiffs in the use of their mill and water privilege did not invade any rights of the defendant."

We are not however prepared to say that such prior appropriation, especially if of long continuance, may not be taken into consideration as one of the many elements which enter into the question of fact, whether in a given case a detention of the water above which interferes with an existing use and appropriation of it below, be or be not reasonable. It is enough for the purpose of the present case to say that it is not a controlling circumstance, and certainly not in point of law decisive.

The plaintiffs claim, in the second place, that their rights as mere riparian proprietors are violated by the acts of the defendants, that it is a familiar maxim that " *aqua currit et currere debet*," and that under this maxim any detention of the water by the proprietor above is unreasonable which inflicts serious damage upon the proprietor below; which the committee find is inflicted in this case by the detention complained of.

Under the maxim referred to water cannot be detained for the use of mills so as to deprive the proprietors below of what is needed for domestic and agricultural purposes, and under

that maxim water cannot be *diverted* from its natural channel to the prejudice of the lower proprietors upon the stream.

But water power is made available mainly by means of dams, by which it is temporarily detained, and its power thereby accumulated and stored up for use, and the maxim of "*debet currere*" is not applicable to such detentions of the current as are convenient and necessary and usual for the purpose of making such accumulations.

The right of the proprietor above to make the water useful to him by detaining it long enough to render it useful, is of the same quality as the right of the proprietor below to take the constant course of the current for his use, where both parties are applying the water to the artificial use of propelling machinery. The two rights being thus in apparent conflict, which must yield? In deciding such a question many circumstances come naturally into consideration.

1. In the present case, where the plaintiffs wish to run their mills day and night, and the defendants wish to run theirs during the usual working hours only, the custom of the country may well be referred to as an important consideration.

On this subject the committee finds that " for many years the respondents have run their cotton mill only in the daytime, from 6 A. M. to 6 P. M., and this has been and is the general custom of the country with cotton and woolen mills, and mills for the manufacture of most other goods; paper mills being the leading exception."

Independently of this finding it is matter of notoriety that mills usually lie still at night and that dams are usually constructed of such height and size as to detain the water during the night for the more efficient working of the mill by day, and that where individual dams are not adequate large reservoirs are provided like that mentioned in the committee's report at Rockville, the gates of which are closed during the night in order to store up the power, which during the day drives the machinery of a long chain of mills which successively receive the supply.

The right of the up stream proprietors thus to detain and use the water is of the highest importance, and the case must

be a strong one in favor of the down stream owner success-fully to resist it.

The cases in Pennsylvania go much further than we are called upon to go in this case in favor of the rights of the up stream owner. In that of *Hay* v. *Sterret*, 2 Watts, 237, it was decided that if the water was no longer detained than was necessary for the proper enjoyment of it as it passed through the defendant's land for the use of his mill, it was a damage to which the plaintiffs (owning a mill below) must submit. In *Wheelan* v. *Ahl*, 29 Penn. S. R., 98, the same decision was made, although by means of the detention at night the water did not reach the lower mill till 8 or 9 o'clock in the day, and during the remainder of the day more water was poured into the stream from the upper works than could be used to advantage by the lower mill.

2. In deciding such a question it is important to consider whether the damage of which the down stream proprietor complains is the necessary consequence of the detention complained of, and whether it may not be imputable to the insufficiency of his own privilege. In this case it is found that "the Keeney & Wood mill has a small and narrow pond only, running up to near the respondents' lower wheels, and when the respondents run full they must always have sent more water than the Keeney & Wood mill used or could hold; but this waste is a good deal increased by the respondents' practice since the drought."

It appears from the committee's report that a paper mill situate on the Hockanum above the defendants' cotton factory has a reservoir of sufficient capacity to retain the water sent down by day from the Rockville dam and thus to run nights and days with great uniformity, and thus that paper mill does not suffer by the nightly closing of the Rockville reservoir. It is obvious that if the plaintiffs had such a reservoir they would have no grounds of complaint against the defendants, and it would seem that a manufacturer proposing to prosecute a business which requires the use of water night and day, a use admitted to be somewhat exceptional, should secure a water privilege and a pondage adequate to his wants.

3. In deciding such a question it is important to consider also what general rule on the subject will best secure the entire water of a stream to useful purposes. If the plaintiffs are right in their claims the defendants must either run their mill nights or suffer the useless escape of half the water which flows past their mill. But such water may be saved if the proprietor below is required to see to it that if he wants the water nights he must secure a privilege adequate to such a want. We think, if we should announce it to be the general rule that the water of streams may not be detained and accumulated at night to be applied to machinery during the day, we should render useless a large portion of the water power in the state.

4. In considering such a question the local customs of a stream are very proper subjects of enquiry, and it was strenuously urged by the plaintiffs that the Hockanum was mostly appropriated to paper mills, and that these mills all run night and day. As already stated there is one paper mill above the defendants' mill, but that has a sufficient reservoir of its own for constant use. It appears also that there are several paper mills below those of the plaintiffs, but it does not appear that any of these mills are injuriously affected by the detention of which the plaintiffs complain, and it does not appear whether they have or have not ample pondage of their own.

There are other matters which we need not refer to, which may properly bear on the question whether the acts of the defendants of which the plaintiffs complain be or be not reasonable. As already stated, the question is ultimately one of fact, and the burden of proof is on the plaintiffs to show that the acts complained of are illegal or unreasonable.

We are satisfied that this is neither expressly found in favor of the plaintiffs, nor is it found by necessary legal implication.

We therefore advise that the plaintiffs' bill be dismissed.

In this opinion the other judges concurred; except Foster, J., who dissented.