JOHN TETHERINGTON, Appellee, *vs.* DONK BROS. COAL AND
COKE COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. RIPARIAN RIGHTS—*when upper proprietor is liable to lower.*
An upper proprietor who constructs a dam and deposits in the reservoir so made large quantities of coal mine refuse, which, owing to the breaking of the dam, is deposited upon lands of the lower proprietor in such quantity as to destroy the value of the land for farming purposes, is liable to the lower proprietor for the damage.

2. SAME—*the rights of riparian proprietors are relatively equal.*
The right of each riparian proprietor to use the stream is subject to a like right in the other proprietors, and each must submit to a reasonable use by the other as long as no substantial injury is inflicted; but the right of each depends upon the reasonableness of the use and the extent of detriment to the other proprietors.

3. SAME—*when instruction respecting riparian rights need not contain qualifications.* An instruction stating the general rule that "every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water and to have the same flow in its natural state, without interruption," need not contain qualifications with respect to the extent of the interruption and the degree of injury sustained, where the evidence clearly shows an unreasonable use by the upper owner and serious injury to the other.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. J. N. MOYERS, Judge, presiding.

FORMAN & WHITNEL, and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

C. H. BURTON, W. E. WHEELER, and W. E. HADLEY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action on the case brought in the circuit court of Madison county by John Tetherington, against Donk Bros. Coal and Coke Company, to recover damages to cer-

tain farm lands caused by coal, slack, sulphur, slate and other debris being cast upon appellee's land by the waters of Hadley branch. A verdict of $3000 was returned by the jury. A *remittitur* of $500 was entered in the circuit court and judgment was rendered against the coal company for $2500, which was affirmed by the Appellate Court for the Fourth District. From the judgment of affirmance in the Appellate Court this appeal is prosecuted.

Appellant operates a coal mine near Cuba, in Madison county. A water-course flowed through appellant's land, passing near the coal mine. This water-course flowed into Hadley branch, and Hadley branch passed through appellee's farm about two or two and one-half miles below the coal mine. Appellant constructed a dam across the stream near its mine for the purpose of accumulating a sufficient quantity of water to operate its coal washer, which was used in connection with its mining operations. Into this reservoir appellant dumped the refuse from its coal mine. Appellant's theory was that the refuse would settle to the bottom of the reservoir, and that the water would flow out of the reservoir through the outlet in comparatively a clear and pure state. In the spring of 1904 an unusually heavy rainfall occurred, which washed away appellant's dam, overflowed Hadley branch and distributed the sediment from the reservoir over a large portion of appellee's farm, thereby rendering it unfit for farm purposes.

Appellant presented no motion in the court below to direct a verdict. There are no objections to the admission or exclusion of evidence insisted on in appellant's brief. The only question presented for consideration by this court is whether the court erred in giving the following instruction:

"The court instructs the jury that every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water and to have the same flow in its natural state, without corruption; and if you find, from the preponderance of the evidence in this case, the plaintiff,

Tetherington, was the owner of the land in question and that Hadley branch flowed through the premises, and that the defendant coal company placed a dump or refuse matter in such a place that when heavy rains and waters came that the coal, slack, slate and other substance therefrom was carried down said stream, polluting the same and depositing quantities of such refuse matter upon the said lands of the said Tetherington, and that thereby said lands and premises were damaged and injured, then your verdict should be for the plaintiff."

Appellant contends that "this instruction imposes the duty of guaranteeing the purity of waters descending from the mine, irrespective of whether appellant was guilty of any negligence or not in collecting the water in its reservoir and making such use of it as is consistent with a reasonable use of its property." The instruction, it is said, "would impose a liability upon appellant although the coal slack was carried down the stream and upon the appellee's land by an extraordinary and unprecedented rain." The instruction above set out was the only one given on behalf of appellee, while on behalf of appellant the court gave eleven instructions, in which appellant's case was fully and fairly covered.

The objections pointed out to the instruction given are untenable. The law has been announced in this court in numerous decisions that it is the right of every owner of land over which a stream of water flows, to have it flow in its natural state and with its quality unaffected; that the "right to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold, of which the owner cannot be disseized except by due process of law, and the pollution of a stream constitutes the taking of property, which may not be done without compensation." *City of Kewanee* v. *Otley,* 204 Ill. 402; *Beidler* v. *Sanitary District,* 211 id. 628.

Appellant's argument is, that the enforcement of the right of the lower riparian owner literally as laid down in

the instruction and the authorities would exclude the riparian owners above from the enjoyment of any use of the stream, except such use as would not diminish the quantity or impair the quality of the waters. Language such as we have quoted from the decision above referred to is to be understood as a strong expression of the general principle employed in cases in which it did not become necessary to consider how far there might be exceptions, or how far one might be heard to complain of insignificant injuries, which left the stream to flow on without substantial change. The rights of the several riparian owners on the water-course are relatively equal. While the right to acquire and enjoy property is an absolute right which existed back of all constitutions and laws, still the means of acquisition and the manner of enjoyment are subject to regulation by law and are relative. In a strict and highly technical sense any use of a stream of water may diminish the quantity or impair the quality in some infinitesimal degree, but it is not this sense in which the law assures the right of a riparian owner to the use of the stream. It would be of no avail to a land owner to give him such a right, for in turn the next lower riparian owner would have the same strict right to have the stream come to him in like condition, so that no one would have a right to do more than stand on the shore and see the stream flow by him. The right of each proprietor to use the stream is subject to a like reasonable right in other riparian owners, and each must submit to such reasonable use by his neighbor, so long as such use does not inflict substantial injury upon other owners who have a like right. When questions arise between riparian owners respecting the right of one to make a particular use of the water in which they have a common right, the right will generally depend on the reasonableness of the use and the extent of the detriment to the lower owner. (Cooley on Torts, 1216.) In the case at bar there was no necessity for pointing out the exceptions to the general rule. The facts in the case show the appel-

lant deposited a large quantity of refuse in the reservoir, and that when the dam broke the settlings were carried down and deposited upon appellee's land to the depth of eighteen inches in some places, and that the effect was to practically spoil twenty-five or thirty acres of valuable bottom land. As applied to this case the instruction is not open to the criticism made upon it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*