## Charles Voss, Appellee, v. Chicago Sandoval Coal Company, Appellant.

1. Watercourses—*extent of right of user*. A person having the right to use a stream of water must do so as not to injure such stream for others having a like right.

2. Watercourses—*when pollution confers right of action*. It makes no difference how a stream of water was polluted or rendered unwholesome, or how the water was made impure, if it is in fact rendered unwholesome or impure to the prejudice of others, then not only is section 221 of the Criminal Code violated but a civil right of action is created.

Appeal from the Circuit Court of Marion county; the Hon. Thomas M. Jett, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

Noleman & Smith, for appellant.

George W. Smith and Charles H. Holt, for appellee.

Mr. Justice McBride delivered the opinion of the court.

This was an action brought by appellee against appellant, in the Circuit Court of Marion county, for the pollution of a watercourse or stream. A trial was had by a jury and judgment rendered for $160 and costs, to reverse which the appellant prosecutes this appeal.

It is disclosed by the record in this case that, at some time during the summer of 1910, the Lake Oil Company was prospecting for oil and gas in and near the village of Sandoval, and in drilling a hole they went through the workings of defendant's coal mine No. 2, located east of the Illinois Central Railroad and near the village of Sandoval. The well proved to be a dry one and the oil company removed its casing and attempted to plug the hole so as to prevent salt water, from below the mine, flooding it but this they failed to

do, and as a result it is charged that a large amount of salty, acid and other mineral waters escaped in to appellant's mine, and as a result prevented appellant from prosecuting its work of mining and hoisting coal; whereupon and about November 15th, the appellant started two high pressure pumps and several water boxes to hoisting water from this mine and continued the operation of these pumps and boxes for about four weeks, pumping approximately about four thousand barrels of water per day; as the water was drawn from the mine by appellant it was thrown into a ditch and thence conveyed to Prairie Creek, a natural stream which extended through appellee's farm, and had prior to that time furnished appellee's stock with an abundance of good water, free from poisons, and was used principally for stock water; that the water thrown in to this creek by appellant was of a yellowish color, acidulous and salty and after its presence it was noted that the fish, turtles and musk-rats in the creek died. The jury found that, as a result of turning this water from the mine into the creek, the appellant polluted the stream of water, rendering it poisonous to stock, and as a result killed a horse and injured a calf belonging to appellee, and this was the basis of the verdict and judgment against appellant.

Counsel for appellant, in their argument, do not deny the pollution of the stream of water, and the injury to the stock of plaintiff but contend that there is no liability in this case because the water was cast in to appellant's mine without its fault and over its objection and protest, when it had no means of preventing the same; that it did nothing to contaminate or pollute the water but hoisted and pumped the same from its coal mine in a reasonable, careful and proper manner and adopted the only means which could have been used consistent with proper and careful mining; that it had the right to dump the water on its premises, and although it flowed naturally into Prairie Creek and polluted the waters of the same to the

damage of the plaintiff, that his damages resulting therefrom are *damnum absque injuria.*

The errors assigned by counsel for appellant are, that the court erred in the exclusion of evidence offered by appellant to show the capacity of the mine and the number of men employed; that the oil well was drilled on the premises of a third party without the consent of appellant, and the salt water cast into its mine without its knowledge or consent; that the only method of getting the water out of the mine was the one adopted; that the appellant had no way of preventing the drilling of the hole through its workings. Second, that the court erred in refusing to give the instructions offered by appellant, the effect of which instructions were, that the defendant had a right to operate its mine and pump the water therefrom whenever and as often as it became necessary, and that if the defendant was using its own property in an ordinarily, proper and lawful manner, and damages were caused to the plaintiff by reason of the water pumped from said mine polluting the watercourse, the defendant would not be liable. Third, that the court erred in not giving the peremptory instruction offered at the close of the evidence directing a verdict for the defendant.

These questions, however, are all involved in the one proposition suggested by counsel, to wit: "There is no liability in this case; the appellant had a right to pump the water from its coal mine as a necessary incident to the reasonable and proper use of its own property and the damages resulting to appellee are *damnum absque injuria.*"

It is not necessary to discuss the several errors assigned, for if the proposition laid down by counsel for appellant is a correct theory of the law of this state, then appellant was entitled to have the evidence offered by it presented to the jury, and was also entitled to its instructions offered bearing out the principles contended for; but if the contention of counsel for ap-

pellant upon this proposition is not correct, then the court did right in excluding the evidence and refusing the instructions.

According to the evidence offered by appellant, the Lake Oil Company committed a wrong when it drew the casing and cast this acidulous and salty water into appellant's mine, but because an unlooked-for and unusual burden had been cast upon appellant, was it justified in getting rid of this burden at the expense of, or to the detriment of appellee? It is said by counsel for appellant that for the purpose of encouraging the mining industries of this state that the owner of a mine or of an oil well, should not be held liable for injuries to property caused by the pollution of the water of a stream with oil and salt water where such pollution is necessary to the enjoyment of the mine or well and the owner is not actuated by malice and has exercised due care to avoid the injury. To establish this proposition counsel has referred to some six or eight cases decided by the courts of different states, and especial attention is called to the case of the Pennsylvania Coal Company v. Sanderson, 113 Pa. 126; and to the case of Ohio Oil Company v. Westfall (App. Court of Indiana), 88 N. E. 354. We have examined these cases, and while they may sustain the position of counsel in this case, we do not believe that they are in harmony with the statute and decisions of the Illinois courts, or with the decisions of the major part of the states upon this question.

It is provided by section 221 of the Criminal Code, that, "It is a public nuisance to corrupt or render unwholesome or impure the water of any spring, river, stream, pond or lake to the injury or prejudice of others." Under this statute it would make no difference how the stream was polluted or rendered unwholesome, or how the water was made impure; if it in fact was rendered unwholesome or impure to the prejudice of others then it would be a violation of the statute, and this doctrine is fully sustained in the case

of Barret v. Mt. Greenwood Cemetery Assn., 159 Ill. 385.

It seems to be a well recognized principle of law that an action will arise where the waters of a stream are rendered unwholesome by the operation of mills and factories, the refuse from which poisons, corrupts and renders unwholesome the waters of a stream, or in some way impairs its usefulness. The deposit of dye stuffs, whereby a stream is polluted or discolored; the discharge of poisonous and corrosive substances into a stream; the emptying offensive matters from tan yards; deposits of sawdust, waste or refuse from mills have, by many courts, been held to be actionable. A. & E. Enc. of Law, Vol. 28, p. 973 (First Edition).

The same author on page 968, says: "The right of every owner of land through which a stream of water flows, to have the same flow in its natural state, extends to the quality as well as the quantity of water, and therefore one who pollutes or contaminates water may be liable to those injured thereby."

And in the case of Tetherington v. Donk Bros., 232 Ill. 522, the court says: "The law has been announced in this court in numerous decisions that it is the right of every owner of land over which a stream of water flows, to have it flow in its natural state and with its quality unaffected; that the right to a stream of water is as sacred as the right to the soil over which it flows. It is a part of the freehold of which the owner cannot be disseized except by due process of law, and the pollution of a stream constitutes the taking of property, which may not be done without compensation." This doctrine is also recognized in the case of the City of Kewanee v. Otley, 204 Ill. 402; Beidler v. Sanitary District, 211 Ill. 628.

If the doctrine contended for by counsel for appellant were adopted as a rule of law, then it would necessarily follow that any person occupying a stream of water above another might engage in a business that in the reasonable and necessary prosecution of which

would result in such pollution of the stream of water as to make it injurious and unfit for use for the lower proprietors on such stream. We do not think that this doctrine is tenable; and while it is true that every man should have the right to a reasonable use of a stream of water, yet he must so use it as not to injure it and destroy it for those below him. It is said in the case of Tetherington v. Donk Bros., *supra:* ''The right of each proprietor to use the stream is subject to a like reasonable right in other riparian owners, and each must submit to such reasonable use by his neighbor, so long as such use does not inflict substantial injury upon the other owners who have a like right.''

We think that the contention of counsel for appellant is not sustained by the decisions of the courts of this State, and that the presiding judge did right in rejecting the testimony offered by appellant, in refusing the instructions and denying a motion for a new trial, and the judgment of the Circuit Court is affirmed.

*Affirmed.*