SANDUSKY PORTLAND CEMENT CO. v. DIXON PURE ICE CO.

(Circuit Court of Appeals, Seventh Circuit. January 15, 1915.)

No. 2149.

1. WATERS AND WATER COURSES &#x25C9;&#x2192;42—RIGHTS OF RIPARIAN OWNERS.

Each riparian owner is entitled to the reasonable use of the water of a river, including any use of the water which does not essentially or materially diminish the quantity, corrupt the quality, or so detain it as to deprive other proprietors or the public of a fair and reasonable participation in its benefits.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 33, 34; Dec. Dig. &#x25C9;&#x2192;42.]

2. WATERS AND WATER COURSES ⬡⟹77—POLLUTION—ACTIONS—BURDEN OF PROOF.

The burden was on a riparian owner, seeking to enjoin an upper riparian owner from discharging hot water into the stream, thereby retarding the formation of ice, to show that its damages were substantial, and caused by the unreasonable acts of the upper owner.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 65, 66; Dec. Dig. ⬡⟹77.]

3. WATERS AND WATER COURSES ⬡⟹77—POLLUTION—ACTIONS—SUFFICIENCY OF EVIDENCE.

Where it would result in great hardship and expense to restrain a riparian owner from emptying heated water into a river, its unreasonable use of the water and the injury to a lower riparian owner must be clearly established.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 65, 66; Dec. Dig. ⬡⟹77.]

4. WATERS AND WATER COURSES ⬡⟹65 — POLLUTION — UNREASONABLE USE OF WATER.

It was an unreasonable use of the water of a river, and an unwarranted interference with the riparian rights of a lower owner, engaged in the business of taking ice from such river, for a riparian owner operating a factory to discharge into the river several million gallons of water per day taken therefrom for cooling purposes, so heated that it retarded the formation of ice and made it impossible for the lower owner to conduct its ice business at a profit.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. ⬡⟹65.]

5. EMINENT DOMAIN ⬡⟹97—RIGHT TO COMPENSATION—"TAKING."

The pollution of a stream constitutes the "taking" of property, which may not be done without compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 250, 251; Dec. Dig. ⬡⟹97.

For other definitions, see Words and Phrases, First and Second Series, Taking.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit by the Dixon Pure Ice Company against the Sandusky Portland Cement Company. Decree for complainant, and defendant appeals. Affirmed.

Upon a hearing in the District Court upon the bill herein, it was ordered that a perpetual injunction issue against appellant, hereinafter termed defendant, restraining it from causing heated water to flow across or upon the land of appellee, herein called complainant, at such time or times as ice would, in the course of nature, otherwise form thereon, and from causing and doing such acts as would tend to cause the retardation of the formation of ice thereon, and that the question of the consideration of damages be reserved for a future hearing.

From the record it appears: That each of the parties is the owner or lessee of extensive riparian rights upon the southerly bank of Rock river, near the city of Dixon, in the state of Illinois. Complainant owns and operates upon its side a plant for the gathering, storing, and sale of ice in large quantities, which ice is taken from said Rock river opposite its said plant. That defendant owns and operates a cement factory or plant situated upstream from complainant. That complainant is dependent upon the freezing up of that part of said river upon which its ice plant abuts for its ice supply. That

defendant takes from and returns to the said river between 3,000,000 and 4,000,000 gallons of water per day for cooling purposes in connection with its condensing machinery. That when discharged from defendant's factory into the river the water so used is heated to a temperature of from 50° to 60°, and that, from the point of discharge, it flows a distance of about 3,125 feet to the upper line of complainant's shore rights, which distance it accomplishes in about 2½ hours.

It further appears that complainant has introduced in evidence the testimony of a host of witnesses and a great mass of documentary evidence, and also certain exhibits, from which it claims to have established as facts: (1) That the water from defendant's discharge pipe aforesaid descends in a more or less heated condition to, upon, and across complainant's ice field in such a manner as to affect the temperature thereof; (2) that the said flow can be traced from the discharge pipe aforesaid, in a stream of open water of about 100 feet in width, through complainant's ice field, at times when said ice field would otherwise be frozen up, leaving banks of ice upon each side thereof; (3) that said stream results in raising the natural temperature of the water in complainant's ice field, or that portion thereof with which it comes in contact, $47/100°$; (4) that an increase of $47/100°$ in temperature materially retards the formation of ice, and in the present case practically destroys complainant's said ice-cutting field, so that, whereas formerly it was able to secure a large supply of commercial ice from that part of the river next to the southerly bank thereof opposite its said plant, now the ice-producing character of that portion of said river is practically ruined, whereby complainant is greatly damaged and rendered unable to profitably carry on its said ice business; (5) that said injury is a continuing one, and that unless defendant be restrained complainant is remediless in the premises.

While not seriously contesting the rise in temperature of $47/100°$, defendant introduced a great volume of evidence to show that its discharged water was not the cause of the failure of complainant's ice field to produce commercial ice; that such failure, if it existed, was owing to the unfavorable weather for ice production at the dates relied on; that a thermal increase of $47/100°$ in the water constituting complainant's ice-cutting field was of practically insignificant importance; that the discharge of water, heated in the process of cooling machinery, was usual in that locality; that it was not possible, without incurring prohibitive outlay, to reduce the temperature of the water at the point of discharge; and that to restrain such discharge would practically deprive defendant of its right to the use of the river water for machinery cooling purposes.

The errors assigned go to the merits of the controversy.

Francis W. Parker, of Chicago, Ill., and Edward H. Brewster, of Dixon, Ill., for appellant.

Clyde Smith, of Dixon, Ill., for appellee

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge. (after stating the facts as above). As usual in such cases, the testimony is conflicting. Out of the vast volume of it, however, the District Court, which heard and saw the witnesses, must have found, and doubtless did find: (1) That defendant's discharge of from 3,000,000 to 4,000,000 gallons per day into the Rock river during the ice-forming weather conditions, at a temperature of from 50° to 60°, resulted in an increase of the temperature of the water of the river opposite and adjoining complainant's plant, or that part thereof used by complainant as and for its ice-cutting field, of $47/100°$; (2) that such increase in temperature was sufficient to and did practically retard the formation, at the times when it would be otherwise naturally produced, of ice thereon of a commercial charac-

ter, to a degree which made it impossible for complainant to conduct its said ice business at a profit; (3) that, in order to protect the interests of complainant in the premises, the defendant should desist or be restrained from emptying into the river at its plant hot water from its condensing or other machinery in such a manner as will tend to increase the temperature of the water in complainant's said ice field during ice-forming weather, provided the court has the power so to do under the circumstances of this case without unlawful interference with the rights of defendant as the owner or lessee of its said riparian rights. These deductions of fact we accept as fairly sustained by the evidence, reinforced by the presumptions which attend the finding of the trial court.

[1] That each riparian owner is entitled to the reasonable use of the water of Rock river at its respective site is too well settled to require citation. The question presented is: Was the use made of the upper riparian rights here involved a reasonable use thereof? If so, the complainant may not complain, even though it suffer some injury incidental thereto. Dumont v. Kellogg, 29 Mich. 420, 18 Am. Rep. 102; Gehlen Bros. et al. v. Knorr et al., 101 Iowa, 700, 70 N. W. 757, 36 L. R. A. 697, 63 Am. St. Rep. 416; Elliott v. Fitchburg Ry. Co., 10 Cush. (Mass.) 191, 57 Am. Dec. 85; Lockwood Co. v. Lawrence, 77 Me. 297, 52 Am. Rep. 763; Beidler v. Sanitary District, 211 Ill. 628, 71 N. E. 1118, 67 L. R. A. 820. Says the court in the last-named case:

"The limitation and extent of the use of the water is that it shall not interfere with the public right of navigation, nor in a substantial degree diminish and impair the right of use of the water by other riparian owners."

In Palmer v. Mulligan, 3 Caines (N. Y.) 307, 2 Am. Dec. 270, it was held that the upper owner had the right to erect a dam, when necessary for the enjoyment of his riparian rights, even though such obstruction necessitated increased expense on the part of the lower owner and greater difficulty in getting logs to his mill, provided enough water was left to work the lower mill. To the same effect is Gould v. Boston Duck Co., 13 Gray (Mass.) 442.

So in Keeney & Wood Manufacturing Co. v. Union Manufacturing Co., 39 Conn. 576, where the upper owner was obliged to run his mill by day only, and where he allowed the water to accumulate overnight to the injury of the lower owner, whose mill ran day and night, a restraining order was denied. It was there held that each had the right to a reasonable use of the running water; that the burden of showing unreasonable use by the upper owner was on the lower owner; that in deciding the conflicting rights the court should consider (1) the custom of the country; (2) the local custom; (3) what general rule will best secure the entire stream to useful purposes; and (4) whether the injury to the lower owner does not arise from the insufficiency of his own privilege.

[2] It is the duty of each of the riparian owners to use all reasonable effort and means to avoid interference with each other's use of the water, and the burden is on the lower owner to show that its damages are substantial and are caused by the unreasonable acts of the upper owner.

[3, 4] It appears from the evidence that to restrain defendant from emptying its heated water into Rock river will result in great hardship and expense, so that the injury to complainant and defendant's unreasonable use must be clearly established. Complainant may not insist on such a use of the water by the defendant as will deprive the latter of any use thereof which may be necessary for its business purposes, provided complainant can by reasonable diligence and effort make the flowing water reasonably answer its own purposes. There must be a fair participation between them. "When questions arise between riparian owners respecting the right of one to make a particular use of the water in which they have a common right, the right will generally depend on the reasonableness of the use and the extent of the detriment to the lower owner." Tetherington v. Donk Bros. Coal Co., 232 Ill. 522, 83 N. E. 1048. But where, as in the present case, it is shown by the evidence that defendant's use of the river water, while essential for its own purposes, entirely destroys the right of complainant thereto, there can be no claim by defendant that its use thereof is reasonable. In other words, the emergency of defendant's needs is not the measure of its rights in the water. 40 Cyc. 563, and cases there cited; Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643.

The running of water in a heated state down upon a lower riparian owner has several times been before the courts. In Mason v. Hill, 5 B. & A. 11, damages so sustained were awarded and allowed to stand. "However great his necessity," says the court in Walker Ice Co. v. American Steel & Wire Co., 185 Mass. 463, 70 N. E. 937, "one riparian owner would have no right to foul the water of a stream or turn in hot water to the injury of another riparian owner"—citing Merrifield v. Lombard, 13 Allen (Mass.) 16, 90 Am. Dec. 172.

[5] The pollution of a stream constitutes the taking of property, which may not be done without compensation. Tetherington v. Donk Bros. Coal Co., supra; Elliott v. Fitchburg Ry. Co., supra. In Tipping v. Eckersley, 2 Kay & Johnson, 264 (69 Eng. Reprint 779), the court held that to use water, and return it into the stream heated to such a temperature as to make it unfit for use below, was an unreasonable use thereof. The general rule is well stated in the case of Lancey v. Clifford, 54 Me. 487, 92 Am. Dec. 561:

"Each proprietor may make any use of the water flowing over his premises which does not essentially or materially diminish the quantity, corrupt the quality, or detain it so as to deprive other proprietors, or the public, of a fair and reasonable participation in its benefits. Race v. Word, 30 Eng. L. & Eq. 187; Johnson v. Jordon, 2 Metc. [Mass.] 234, 37 Am. Dec. 85; Dickinson v. Grand Junction Canal Co., 7 Ex. 282; Tyler v. Wilkinson, 4 Mason, 397, Fed. Cas. No. 14,312. This rule does not require that there shall be no diminution, abstraction, or detention whatever, by the lower or upper riparian proprietor, as that would be to prevent all reasonable use of it. The same principal in regard to use by the riparian proprietors, applies, as in the public use of the stream as a highway; it must be a reasonable use, and not inconsistent with the reasonable enjoyment of the stream by others who have an equal right to its use. Reasonable use is the touchstone for determining the rights of the respective parties."

Authorities to the same effect might be multiplied indefinitely. We do not deem it necessary. We conclude that the use made by defendant

of the said water of Rock river, taken in connection with its discharge of the heated return water into said river, was an unreasonable use of the flowing water of said river, that the same was an unwarranted interference with the riparian rights of the complainant, and that complainant was entitled to have defendant restrained from continuing its said unreasonable acts.

The decree of the District Court is affirmed.