Julian A. Hertz, J.
In a time of justifiable concern for environmental conditions courts should guard against contributing to what might become hysterical reactions by persons charged, as in this case, with criminal responsibility for an oil spill. For that reason, and although there was an indication by defendant of its willingness to plead guilty to the charge, this court decided to reject that approach and after trial on January 24, 1974 to consider whether the defendant is guilty of violation of section 33 of the Navigation Law.
The corporate defendant Oceana Terminal Oorp. is a subsidiary of Cirillo Bros. Petroleum Co., Inc. Oceana operates an oil storage terminal at 149th Street fronting on the Bast River. On October 15, 1973, at about 10:45 a.m., Police Officer Daniel Kelleher attached to the harbor unit, while on routine duty aboard a police launch, observed an oil spill at the site. According to his testimony, the source appeared to be a ruptured storage tank having a capacity of approximately one million gallons. He testified he had observed the tank on the day before when he stated its condition was unimpaired. Upon making the foregoing observation, the police launch was brought to shore, the defendant was notified through its manager, Charles J. Abarno, who confirmed that immediate attempts were made to stem the flow. Those efforts succeeded within 10 minutes. It was discovered that the trouble originated not from the tank but from a broken 8-inch check valve.
According to Mr. Abarno’s testimony, the system is constantly under surveillance. He asserted the trouble point had been inspected only 20 minutes before the break by the corporate *7 vice-president and another employee. It was found free from defects at that point in time. Mr. Abarno added that the break in question was the first in his five years’ association with the company. At the close of the evidence the court reserved decision on its own motion to dismiss (it is noted that although defendant was represented by counsel, said counsel was otherwise engaged and was not in court). Nevertheless, the corporate representative consented to make the trial record and to waive the presence of counsel.
Section 33 of the Navigation Law provides: “No person shall drain, deposit or cast any dead animal, carrion, offal, excrement, garbage or other putrid or offensive matter into the navigable waters of the state, except as the same may be authorized by the state department of health. Every person violating the provisions of this section shall upon conviction by any court of competent jurisdiction be guilty of a misdemeanor punishable by a fine of not to exceed one hundred dollars, or by imprisonment of not more than one year, or by both such fine and imprisonment for each offense. The district attorney of the county, in which the offense is committed or exists, is authorized and directed to prosecute such offender or offenders.” Although the statute had its genesis in the Laws of 1885 and was subsequently revised and several times amended, it does not appear to have been construed in the intervening period of almost 90 years. Parenthetically, it is noted that"this prosecution did not arise at the direction of the District Attorney, but, as aforesaid, upon the issuance of a universal summons.
This court takes note of the fact that the statutory injunction is directed primarily at garbage and waste. It seems a substantial enlargement of the statutory purpose to read the section as including an oil spill as within the legislative intent. Such a construction would, of necessity, have to depend upon inclusion of oil within the definition of “ offensive matter ”. Quite obviously, oil is hardly such except, perhaps, when it is found misplaced in the described manner.
But in attempting to ascertain the legislative intent this court conceives it appropriate to note that the 1965 additions to the section dealt with the dumping of trash in Chautauqua Lake (§ 33-b) and the regulation of watercraft in the proper disposal of human.waste and litter (§ 33-c).
This court holds the doctrine of ejusdem generis is properly to be applied in the determination of the statutory ambit. That rule requires the association of words of general import (here “ or offensive matter ”) must be “ regarded as comprehending *8 only matters of the same kind or class as those particularly stated ” (14 Words and Phrases, p. 212, citing State v. End, 232 Minn. 266). Thus, it is the decision of this court that the oil spill which gave rise to this complaint is not within the statutory purview.
Beyond that, it is well to note that a finding of guilt in this case would go far beyond the civil responsibility cast upon the owners of buildings where water damage is caused when pipes suddenly break without prior indicated defect. In 2 A.L.R. Fed. 794, discussing the Oil Pollution Act of 1924 (U. S. Code, tit. 33, § 431 et seq.), it is recognized (p. 798) that any avoidable discharge is prohibited “ unless they result from unavoidable accident or collision ”. The People’s witness in the case at bar offered no evidence whatever on that subject. The same discussion at page 799 cites cases which support construction of that act as creating an exception from liability where the spill was caused by unavoidable accident absent negligence.
Finally, New York has its own Environmental Conservation Law which has not and probably could not have been invoked here. Note is also taken of the reversal of a conviction in a similar situation involving an Illinois statute prohibiting the corruption of water where 6,000 barrels of oil spilled into a lake solely as a result of an accident (People v. Hensley, 325 Ill. App. 291).
Accordingly, the case is hereby dismissed.