## Keppel *v.* Lehigh Coal and Navigation Company, Appellant.

| 200 | 649 |
|---|---|
| 29 SC | [1]621 |
| 200 | 649 |
| 31 SC | [1]217 |
| 200 | 649 |
| j220 | [1] 79 |

*Equity—Injunction—Continuing trespasses—Nuisance.*

Injunction is the proper remedy for the prevention of trespasses and nuisances, which by reason of the persistency with which they are repeated, threaten to become of a permanent nature.

*Waters—Pollution of stream—Deposit of culm—Injury to water power— Damages—Mines and mining.*

Where a coal mining company so conducts its operations as to cause a continuous discharge of culm into a stream, and the culm is carried down the stream, and continuously accumulates in a dam and race of a mill, equipped for both steam and water power, the owners of the mill are entitled to an injunction to restrain the continuance of the nuisance, and also to damages for the injuries sustained to the time of suit.

In such a case the owners of the mill are entitled to recover as damages (1) the increased cost of running the mill by steam, in so far as it was made necessary by the diminished water power, occasioned by the introduction of culm and dirt by the defendant; and (2) the cost of cleaning out the culm and dirt from the dams and mill race. They are not entitled, however, to recover the cost of a new arrangement of gateways and sluices intended to keep the mill and the race clear in the future. The injunction will protect them from future interference.

Argued Feb. 18, 1901.   Appeal, No. 96, Jan. T., 1900, by defendant, from decree of C. P. Schuylkill Co., March T., 1897, No. 4, on bill in equity in case of Samuel B. Keppel and Samuel C. Boyer, Assignees of Augustus W. Shick and John B. Wamsher, v. Lehigh Coal & Navigation Company.   Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ.   Decree modified.

Bill in equity for an injunction and for damages.

The facts are stated in the opinion of the Supreme Court.

The court entered the following decree :

1. That the said the Lehigh Coal and Navigation Company, defendant, its workmen, agents and employees, its successors and assigns and their workmen, agents and employees, be perpetually restrained from discharging into Panther creek, and from permitting to escape into said Panther creek, from any of its collieries owned and operated by it or its successors or assigns, any coal dirt, culm or muck or other refuse from

said collieries and from so depositing its said coal dirt, culm, muck and refuse from its mines and collieries that the same may be, from time to time, carried by the ordinary rains and freshets into said creek and from polluting the waters of said Panther creek as set forth in complainant's bill of complaint.

2. That the defendant pay the plaintiff the sum of $4,900, being the damages which the plaintiffs have sustained to the time of trial, by reason of the defendant having unlawfully polluted the waters of said Panther creek.

3. That the cost of this proceeding be paid by the defendant within thirty days from the filing hereof.

*Error assigned* amongst others was the decree of the court.

*F. G. Farquhar* and *John W. Ryon*, with them *Samuel Dickson*, for appellant.—In an action for an injury occasioned by the negligence of another, it is a good defense to show that the injury so far arose from the negligence of the plaintiff himself, that he might by ordinary care and caution have avoided the injury: Germantown Pass. Ry. Co v. Fitler, 60 Pa. 124.

The defendant and its property is charged with a duty which would deprive the defendant of the beneficial use of its property: Hauck v. Tidewater Pipe Line Co., 153 Pa. 366; Pfeiffer v. Brown, 165 Pa. 274; Penna. Coal Co. v. Sanderson, 113 Pa. 126.

The defendant was charged with too great a proportion of the injury: Little Schuylkill Navigation R. R. & Coal Co. v. Richards, 57 Pa. 142.

The injury complained of is not irreparable; if counsel for defendant have rightly apprehended the pivotal question in this case, it is: irreparable injury threatened by defendant's acts complained of: Fricke v. Quinn, 188 Pa. 474.

The court erred in not withholding a final decree in this case, until defendant had been given a fair opportunity to demonstrate the efficacy of its effort to repair the injury complained of.

The court erred in not dismissing the bill: Rhea v. Forsyth, 37 Pa. 503.

The court below erred in awarding any sum as temporary damages: Tillmes v. Marsh, 67 Pa. 507; North Penna. Coal Co. v. Snowden, 42 Pa. 488.

The court below erred in the amount of temporary damages allowed.

*G. H. Gerber*, with him *R. P. Shick*, for appellees.—The defendant's argument of reasonable care is based upon a line of cases applicable not to surface water courses, but to subterranean water courses. The nuisance is a continuous one, the acts repeated from day to day for some years. Under such a state of facts the court held that the injury was irreparable, and it is clearly sustained in such ruling by the following authorities: Walters v. McElroy, 151 Pa. 549; McCallum v. Germantown Water Co., 54 Pa. 40.

On the right of the court to award damages we refer to Allison's Appeal, 77 Pa. 221, and Walters v. McElroy, 151 Pa. 549.

OPINION BY MR. JUSTICE POTTER, November 8, 1901:

The plaintiffs are the owners of about twenty-three acres of land, on the Little Schuylkill river, in Schuylkill county, Pennsylvania, on which is a water power flour mill, with the usual dam and races. The defendant is the owner and operator of coal mines, situate on and near Panther creek, a stream tributary to the Little Schuylkill river, above the lands of the plaintiffs. In the operation of its mines, the defendant has placed culm banks along and near Panther creek, and has allowed its mine water, and the wash water from its breakers and washeries, to reach Panther creek, more or less charged with coal dirt. The coal dirt in this water, and that which has been eroded from the culm banks by rains, and, to some extent by the action of the stream on their bases, has been carried down to the plaintiffs' dam and deposited there, filling the same and impairing the plaintiffs' water power. It is of this injury only, to their water power, by the accumulation of coal dirt in their dam, and also in the race, that the plaintiffs complain. Their flour mill is equipped with steam power, in addition to the water power, for the reason, that, at certain seasons of the year, the water in the stream is too low to furnish power. This bill in equity was filed against the defendant company, praying that it be enjoined and restrained from discharging into the Little Schuylkill river, or its tributaries, the coal dirt, refuse, or

polluted waters, from its breakers, mines or washeries, and from washing, or placing any such dirt, culm or refuse where it might be washed, or escape into the said river, or its tributaries.

The court below found that the injury to the plaintiffs was not permanent, and that the dam and race can be cleared of coal dirt, at a cost very much less than the value of the water power. But, while this is true, yet the very nature of the operation showed, that, as heretofore conducted, there was practically a continuous interference, with the proper use of the water power, by means of an undue loading of the stream with dirt, or culm. Accordingly, a perpetual injunction was granted, to restrain the defendant from polluting the waters of Panther creek in the manner described in the bill, and as set forth in great detail, in the testimony. In addition to this, the learned court, in his decree, assessed the damages sustained by the plaintiffs at the sum of $4,900.

The testimony in this case is voluminous, but we have examined it very carefully. We are satisfied that the case is one in which it is proper for a court of equity to interpose, for the purpose of restraining a continuous trespass.

It is not to be doubted, that an injunction is the appropriate remedy for the prevention of trespasses and nuisances, which, by reason of the persistency with which they are repeated, threaten to become of a permanent nature. Ample authority may be found to sustain this proposition, in the line of cases culminating in Fricke v. Quinn, 188 Pa. 480, and Walters v. McElroy, 151 Pa. 549, etc. In so far, therefore, as the decree restrains the defendant from polluting the waters of Panther creek, it may be sustained.

It has become the established course of procedure in Pennsylvania, where a bill for the purpose of injunction is sustained, to connect with it the account, without compelling the plaintiff to go into a court of law for damages. When therefore, as in this case, the plaintiffs' right to an injunction is established, an account of the damages sustained, follows as an incident, and to avoid a multiplicity of suits: Walters v. McElroy, 151 Pa. 558.

But, in this case, the opinion of the court below does not set forth the rule which was adopted in computing the damages,

and gives no indication of the manner in which the amount was ascertained.  A close study of the testimony fails to disclose any basis of computation which yields the sum awarded.

The plaintiffs were entitled to recover as damages, first, the increased cost of running the mill by steam, in so far as it was made necessary by the diminished water power, occasioned by the introduction of culm and dirt, by the defendant; second, the cost of cleaning out the culm and dirt from their dam and mill race.

As to the first item, the increased cost of steam during the years for which complaint is made, the testimony seems to show pretty clearly that it amounted to the sum of $1,021.23; but, whatever it may have been, the proper measure of this element of the damages, is the actual cost of steam made necessary by the defendant's interference with the water power.  As to the other item, it appears clearly from the testimony that the dam and race can be cleaned out, and that they will then be restored to their original condition.  The cost of this cleaning of the dam and race does not definitely appear from the evidence.  The amount awarded by the court for this purpose, $900, included not merely the cost of cleaning the dam and the race, but of providing a new arrangement of gateways and sluices, which would not only clear out the premises, but would tend to keep them clear in the future.  This is more than the plaintiffs have a right to ask.  The injunction will protect them from future interference in so far as the defendant is concerned, so that the item of $900, awarded by the court to cover this particular, is entirely too large, and is not justified by the evidence.  The actual cost of clearing out the premises is the proper measure as to this item.  Some additional testimony may be required to fix this amount.

It is, therefore, ordered that so much of the decree in this case, as awards a perpetual injunction to restrain the defendant from polluting the waters of Panther creek, in the manner set forth in the said bill of complaint, be affirmed; and it is further ordered that the record be remitted to the court below, for the purpose of restating the account of the damages in accordance with this opinion, and for the entry of a final decree against the defendant, for the payment of the sum so found, together with the costs of suit.