## ARIZONA COPPER COMPANY, LIMITED, *v.* GILLESPIE.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 106.   Argued January 27, 28, 1913.—Decided June 16, 1913.

In Arizona, by statute, all rivers, streams, and running waters are declared public, and may be used for purposes of milling, mining and irrigation. The first appropriator is first in right to the extent necessary for his purposes; and neither the user for mining purposes nor the user for agricultural purposes is placed upon a higher plane than the other.

Where users of waters are placed, as in Arizona, upon the same plane, the rights of lesser users are not subordinated to those of greater users; nor is a wrong done by one to the other condoned because of the magnitude or importance either of the public or the private interests of the former.

Where one of several users of waters is wrongfully injuring the others there is a remedy either at law or in equity; the latter depending upon circumstances including the comparative injury of granting or refusing an injunction.

Where, as in this case, the record does not show the damage which the injunction might cause the defendant, but does show that the interests of complainant and others of his class might be irreparably injured by a continuance of the nuisance, equity may grant relief.

The limitation of necessary use on the right of an appropriator of water applies to quality as well as quantity; and the right to use necessary water does not include the right to so destroy the quality of all the water not used as to continuously injure the property of the other appropriators.

The maxim *sic utere tuo ut alienum non lœdas* applies in Arizona and elsewhere to the use of waters by one appropriator as against another.

Although the nuisance may be a public one and others may be damaged thereby; one who shows that he suffers a special grievance not borne by the public, may maintain a separate action for equitable relief.

In this case *held*, that the contamination of waters in Arizona by a copper plant constituted a nuisance as to the lower appropriators and, under the circumstances, an injunction was properly granted, the Supreme Court of the Territory having provided in the decree that the defendant might have the injunction modified on constructing remedial works to prevent contamination. *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230.

12 Arizona, 190, affirmed.

THE facts, which involve the relative rights of appropriators of water in Arizona and the jurisdiction of a court of equity to enjoin the contamination of the water by an upper-appropriator using the water for mining purposes in favor of a lower appropriator using it for agricultural purposes, are stated in the opinion.

*Mr. John A. Garver* and *Mr. Walter Bennett* for appellant:

Even if the acts complained of constituted a public nuisance, the injury to the plaintiff did not differ in kind from that sustained by other members of the community in which the plaintiff's farm was situated; and, consequently, the plaintiff could not maintain the action. Joyce on Injunctions, § 1081; *Live Stock Co.* v. *McIlquan,* 14 Wyoming, 209; *Donahue* v. *Stockton Gas &c. Co.,* 6 Cal. App. 276, 280; *Kuehn* v. *Milwaukee*, 83 Wisconsin, 583; *Jarvis* v. *Santa Clara*, 52 California, 438.

The injury to the plaintiff did not differ in kind from

that sustained by the other members of the community; consequently, plaintiff could not maintain the action.

All streams of running-water in the Territory were made public, for the purposes of irrigation and mining, including, necessarily, as one of the incidents of the latter, the use of water in the reduction of the ores. See Rev. Stat. 1901, Arizona, Par. 4168, § 1; Par. 4169, § 2; Par. 4174, § 7; Par. 4178, § 11; Par. 4179, § 12; Par. 4180, § 13; Par. 4196, § 29, which are substantially identical with Rev. Stat. of 1887, §§ 3198–9, 3203–5.

As the mining company can lawfully use the streams for the purposes of its business, such use cannot be unlawful or constitute a public nuisance, unless the company so wilfully or carelessly uses the water as to infringe upon the rights of others. Kinney on Irrigation, §§ 250, 251; 40 Cyc. 708, 713; *Hill* v. *Standard Mining Co.*, 12 Idaho, 223, 236; *Bernard* v. *Sherley*, 135 Indiana, 547, 555.

Nothing of that kind was found by the court below, and nothing of the kind is alleged in the complaint.

Even if the mining industry had not been so clearly authorized by the legislature, it is the paramount industry of the State and overwhelmingly dominates all the other industries. The public convenience will always be considered in determining whether certain acts constitute a nuisance. Pomeroy's Eq. Remedies, § 529.

Appellee has no exclusive or superior rights as prior appropriator.

The common-law doctrine of riparian rights has not obtained in Arizona since 1887; and it probably has never been recognized there. Rev. Stat. 1887, § 3198; Rev. Stat. 1901, § 4169; *Boquillas Co.* v. *Curtis*, 213 U. S. 339.

At common law, all riparian proprietors have precisely the same rights to flowing waters, and no one could so use the stream as to interfere with its reasonable use by those above and below him. 3 Kent Comm. 439; 40 Cyc. 559; *New York* v. *Pine*, 185 U. S. 93, 96.

The court below erred in holding that by the abolition of riparian rights plaintiff, as the first appropriator had acquired the exclusive right to the use of the water which could not be interfered with by the defendant. This error was both as to law and facts.

No one could acquire an exclusive right to the use of any stream for the purpose of irrigation. All that a prior appropriator is entitled to, as against others, is a sufficient quantity of water to satisfy his appropriation, while its quality cannot be impaired so as to interfere seriously with the use to which it has been appropriated. Section 22, Political Code Arizona; Kinney on Irrigation, §§ 250, 251; 40 Cyc. 708, 713.

Under the common-law doctrine of riparian rights a lower riparian owner cannot complain of the reasonable use of the stream, even if he is injured thereby. *Merrifield* v. *Worcester*, 110 Massachusetts, 216; *Hayes* v. *Waldron*, 44 N. H. 580; *Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303, 320; *Pennsylvania Coal Co.* v. *Sanderson*, 113 Pa. St. 126, 146.

The principle of priority is not recognized as between an appropriator for irrigation and a subsequent appropriator for mining purposes. The legislature of Arizona in giving precedence to the mining industry merely recognized the fact that the welfare of the State is peculiarly dependent upon the development of its mineral resources.

In view of the natural conditions, it was inevitable that the legislature should have expressly provided that the principal industry of the Territory should not be hampered by claims of prior rights on the part of farmers.

The only duty owing by a mining company to other users lower down the stream using the water for irrigating purposes, is to so conduct its business as not unnecessarily to interfere with the rights of such users.

Even if defendant has operated its reduction works

carelessly,· the plaintiff has an adequate remedy at law for the damages sustained.

Under the policy of the law prevailing in Arizona, appellee has no greater right to stop the operation of the appellant's works than he would have to enjoin the construction of a railroad, where the railroad company possessed the power of eminent domain. *Story* v. *N. Y. El. R. Co.*, 90 N. Y. 171, 179; *Am. Bank Note Co.* v. *N. Y. El. R. Co.*, 129 N. Y. 252, 270; *New York* v. *Pine*, 185 · U. S. 93, 104.

There is no ground for claiming that the damages sustained cannot be estimated. The mere fact that it might· be difficult to assess the exact damages is no reason for granting an injunction. *Wakeman* v. *Wheeler & Wilson Co.*, 101 N. Y. 205, 209.

There should be no absolute injunction because it is unreasonable to close the works completely when efforts are being honestly made to lessen the evil, and because, under the decision below, no showing is possible that the· appellant can exclude all waste material from reaching the water.

In a suit in equity, the conditions existing at the time of the trial control. *Haffey* v. *Lynch*, 143 N. Y. 241, 248; . *Dieterich* v. *Fargo*, 194 N. Y. 359, 363; *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 290, 342.

There is a distinction between the case of a suit brought by a State and one brought by an individual, and the disposition of this court is to grant equitable relief in the former case but, in the latter, to leave the owner to his action at law. See *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230, 238.

· A permanent injunction will not be granted unless the evidence clearly establishes the invasion of the plaintiff's rights by the defendant, with a resulting substantial injury, and there is no finding that any appreciable injury to the plaintiff's land was caused by the defendant alone.

The injunction should be denied, because it would not materially improve the plaintiff's condition. *Wood* v. *Sutcliffe*, 3 Simons (N. R.), 163.

An injunction will not be granted where the injuries to the plaintiff are slight and where the consequences of the injunction to the defendant and others may be very injurious. 1 Spelling on Injunctions, § 417; *Powell* v. *B. & G. Furniture Co.*, 34 W. Va. 804; *Clifton Iron Co.* v. *Dye*, 87 Alabama, 468; *Madison* v. *Ducktown &c. R. Co.*, 113 Tennessee, 331; *McClure* v. *Leaycraft*, 183 N. Y. 36, 44.

Equity regards relative values. While an emission of smoke might constitute a nuisance in the City of New York, it might afford no just ground of complaint in other places such as Pittsburgh. *Bates* v. *Holbrook*, 171 N. Y. 460, 475.

In the contemplation of personal rights, equity will not lose sight of the public interest. A court of equity is never active in granting relief against public convenience merely for the purpose of protecting a technical legal right. *Smith* v. *Clay*, 3 Brown's Ch. 639, note; *Knoth* v. *Manhattan Ry. Co.*, 187 N. Y. 243; *New York City* v. *Pine*, 185 U. S. 93, 99.

If the judgment in this case is sustained, a precedent will be established that will inevitably affect the entire mining industry of Arizona. To permit the plaintiff to refuse to accept a sum representing the damages actually sustained or likely to be sustained by him, and insist upon an unconditional injunction which will result in obstructing and possibly terminating a great industry, would be to furnish him with a club to compel payment of the sum he deems the measure of his damages. *New York City* v. *Pine*, 185 U. S. 93, 97.

*Mr. Ernest W. Lewis*, with whom *Mr. Thos. Armstrong, Jr.*, was on the brief, for appellee.

MR. JUSTICE LURTON delivered the opinion of the court.

This is a bill for an injunction to restrain the appellant from polluting a public stream, whereby the appellee has sustained a special injury as a lower proprietor.

The Arizona Copper Company, Limited, is engaged in mining and reducing copper ore near the town of Clifton, Arizona. Its concentration and reduction works, in which ores are treated, are situated upon or adjacent to small streams tributary to the Gila River. Much of the tailings and waste material from the reduction work is carried by the water used in the reducing process into the streams adjacent, or is deposited nearby and is later carried by the rains into the streams, and thence into the Gila River. The appellee, William Allen Gillespie, is the owner of 276 acres of arid land on the Gila River and some 25 miles below the point where the water polluted above finds its way into the river. He has reclaimed this land and brought it into a high state of cultivation, through irrigation, by means of water drawn from the river into the Montezuma Canal, and thence, by ditches, spread upon his cultivated land. In the dry seasons, particularly, this water so used for irrigating purposes deposits upon his land the tailings and waste material so suffered to get into the tributaries of the Gila River from the reduction works of the appellant above.

Gillespie and those preceding him in title began the irrigation and cultivation of this tract of land in or about 1872, and have continuously appropriated a sufficiency of water necessary for irrigating purposes from the river. A large body of like land situated in the same valley has been irrigated in the same way by waters drawn from the Gila River by the Montezuma and other like canals constructed and maintained for irrigating purposes, and a large agricultural community has grown up dependent upon irrigation.

In the mountains through which the streams tributary to the Gila River pass are great deposits of rock containing copper ore, and since 1872 many mines have been operated. Later the ore was treated in reduction and concentration works which have increased in extent of operations from time to time, until at the time this suit was begun the capital engaged aggregated several millions of dollars and 3,000 men were employed in and about the mining and reduction operations. Prior to 1885 the operations carried on by the mining companies do not appear to have polluted the tributaries of the Gila to any serious extent. Later the operations were enlarged and methods adopted which began to more and more seriously pollute the water used for irrigating purposes by the proprietors below. Thus both courts below found,—"That in or about 1885 the first concentrator was erected for the reduction of ore in connection with the mining enterprise herein mentioned; . . . that some six or eight years before the institution of this action, the water of the Gila River, at other than flood periods; theretofore clear, became discolored by slimes, slickens and tailings and began to deposit such slimes, slickens and tailings through the irrigating ditches herein mentioned in the normal and necessary course of irrigation upon the lands of plaintiff and other lands herein mentioned." The court below further found that the quantity of such waste material carried by the river and deposited upon the lands of the appellee "continuously increased until after the institution of this suit." The harmful and damaging character of these deposits was found in most explicit terms by the court below, and the character of the injury elaborately explained. The appellee's bill alleged that the injury to his crops and to his land was continuous and that his remedy at law was inadequate, and his prayer was that the appellant be perpetually enjoined from polluting the streams to his injury.

Originally there were two other corporate defendants and like relief was sought against them. One was found to be improperly a party and the bill was dismissed as to it. The other defendant was the Shannon Copper Company. As to that company the court below found:

"That after the commencement of this action and before the hearing of this cause the Shannon Copper Company, in consideration of the dismissal of this action as to it, agreed to spare no reasonable effort or expense to minimize the amount of said tailings and waste material from its said works which may find their way into said river, and if possible to do so by any reasonable effort and expense, that it would prevent the flow of any of said tailings and waste material from its said works from flowing into said river, and that said efforts should be made at once, and continued without interruption until the object thereof should be accomplished."

The District Court made a full finding of facts and enjoined the appellant from "in any manner depositing or suffering or permitting to be deposited, or suffering or permitting to flow into the waters of the said Gila River, or into the San Francisco River or said Chase Creek in such manner that they may be carried into the waters of said Gila River, any slimes, slickens or tailings."

This judgment was to go into effect January 1, 1908. But when the record was filed, upon appeal, in the Supreme Court of the Territory, that court, upon a bond being executed, suspended its operation until the case should be determined by it. Upon a final hearing that court confirmed the findings of fact by the court below, but modified its judgment by permitting the appellant, at its own expense, "to construct settling basins at or near the heads of the canals, or elsewhere along the river, by means of which the tailings and slimes carried by the Gila River from appellant's concentrators may be arrested and prevented from being deposited upon the farming lands."

"This suggestion," said the court in its opinion made part of the judgment, "does not appear to have been presented to the trial court, and its decree is so drawn that such means of relief may not be availed of since appellant is enjoined from permitting any tailings or slimes to reach the waters of Gila River. We think, to enable the mining company to take advantage of any efforts it may make in this direction, it should be left to the discretion of the trial court hereafter upon a proper showing made to it temporarily to modify the injunction so as to permit of reasonable experiments being made to ascertain the probability of successfully erecting and maintaining settling basins to effectually dispose of the tailings and slimes without detriment to the lands lying under the canals, and with authority in the District Court likewise permanently to enforce or modify the injunction in accordance with the conditions as they shall be found to be." Thus modified, the judgment was affirmed. Later, it being made to appear that the appellant had designed and put into operation large settling basins and otherwise attempted to arrest, settle and dispose of the slimes, slickens and tailings from its works, and had succeeded in arresting much of the waste material, and was in good faith operating and maintaining such works, the court suspended the operation of the judgment pending an appeal to this court.

In Arizona, by statute, all rivers, streams and running waters are declared public, and may be used for purposes of milling, mining and irrigation. The first appropriator is first in right to the extent necessary for his purposes.

Whatever advantage there may be in a first appropriation of water is with the appellee. There is no question about the quantity of water appropriated by the upper user, the objection being that the quality of the water which comes down to the *lower* proprietor after it is used by the Copper Company is no longer fit for irrigating purposes. Whatever the relative importance of the great

mining and reduction works, using the water on the upper reaches of the Gila River and its tributary streams and of the agriculturists using the same water below, from either a public or private point of view, the right of the lesser interest is not thereby subordinated to the greater. That is sometimes a consideration when a plaintiff seeks relief by injunction rather than by an action at law for damages. The wrong and injury, whether it results from pollution of a stream or otherwise, is not condoned because of the importance of the operations conducted by the defendant to either the public or the wrongdoer, and for that wrong, there must be a remedy. Whether upon a bill such as this a court of equity will restrain the acts of the party complained of, or leave the plaintiff to his action at law for damages, must depend upon the nature of the injury alleged, whether it be irremediable in its nature, or whether an action at law will afford an adequate remedy, and upon a variety of circumstances, including the comparative injury by granting or refusing the injunction. *Atchison* v. *Peterson,* 20 Wall. 507.

The court below found that but one of three concentrators operated by the appellant would be affected by an injunction, and that the extent of the hardship from closing that concentrator had not been shown. On the other hand, the court found that the agricultural interests of a large and prosperous community would suffer great injury and possible ruin, if the pollution should go on.

The Arizona statute places a water user for mining purposes upon no higher plane than a user for irrigation. The suggestion that the right to use for mining and reduction purposes cannot be exercised without polluting the streams with waste material, tailings, etc., and that the lower user cannot, therefore, complain of the necessary consequences of the legal right conferred by statute, is without force. The only subordination of one water user to another is the right of the first appropriator to a suffi-

ciency of water for his necessary uses. That includes the quality as well as the quantity. What deterioration in the quality of the water will constitute an invasion of the rights of the lower appropriator will depend upon the facts and circumstances of each case, with reference to the use to which the water is applied. *Atchison v. Peterson, supra.* In giving a right to use the waters of the public streams for mining purposes, the statute does not provide that such a user may send his waste material or debris down the stream to the destruction or substantial injury of the riparian rights of users of water below, and no such invasion of private property rights should be inferred or implied from the right to use water for mining purposes. *Woodruff* v. *North Bloomfield Mining Co.,* 18 Fed. Rep. 753. The maxim *sic utere tuo ut alienum non lædas* is as fully recognized in the jurisprudence of Arizona as it is elsewhere, and that was the maxim which governed the decision of this case in the courts of Arizona.

That the contamination of the waters of the Gila River constituted a public nuisance which affected a large community of riparian owners and users of the waters for purposes of irrigation, may be true. That as a public nuisance a public prosecution for its abatement might have been maintained, may be also conceded for the purposes of this case. But it is equally true that the appellee had and would continue to suffer a special injury not borne by the public.

Here the appellee alleged a special grievance to himself affecting the enjoyment and value of his property rights as a riparian owner and as an individual user of the water for purposes of irrigation. This gives him a clear right to apply for preventive relief. *City of Georgetown* v. *Alexandria Canal Co.,* 12 Peters, 91, 98; *Mississippi & M. R. Co.* v. *Ward,* 2 Black, 485.

The modification of the decree of the trial court so as to enable the appellant to complete the construction of the

remedial works specified and heretofore mentioned, met every reasonable equity which was asserted by it. It is in substantial accord with the decree of this court in a somewhat similar case. *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230. We find no error in the decree of the court below and it is accordingly

*Affirmed.*