## JORDAN et al. v. UNITED VERDE COPPER CO.

## SAME v. UNITED VERDE EXTENSION MINING CO.

(District Court, D. Arizona.  November 14, 1925.)

### Nos. 161, 162.

**1. Nuisance ⊕⇒5—That defendants were conducting lawful business is no defense to action for damage from smelter smokes.**

That defendants were conducting lawful business in ordinary course is no defense to action for damage to lands, orchards, and crops from smelter smokes.

**2. Nuisance ⊕⇒50(7)—That damages from smelter smokes were not definitely apportionable between defendants held not to relieve from liability for more than nominal damages.**

That damages to lands, orchards, and crops from smelter smokes cannot with certainty be apportioned between two defendants does not relieve them both of liability, except for nominal damages.

**3. Evidence ⊕⇒75—Failure of defendants to disclose contents of smokes complained of warrants inference of highly evil quality.**

In action for damages to lands, orchards, and crops from smelter smokes, failure of defendants to disclose contents of their ores and smokes warrants inference that both were of a highly evil quality.

**4. Trial ⊕⇒133(1)—In action for damages from smelter smokes, instruction affecting defendant's claim of economical value to community held proper.**

Where defendants, in action for damages to lands, orchards, and crops from smelter smokes, argued to jury their economical value to state and community from which jury was drawn, instruction that defendants were not charitable institutions, but profit-making concerns, which included in the price of their product paid by society all costs, including damages paid by them, but that this should not affect jury's duty, *held* proper.

**5. Nuisance ⊕⇒49(2)—Maps and other exhibits, collectively offered, held properly excluded.**

In action for damages from smelter smokes, maps, and exhibits collectively offered, which contained unverified narrative, opinions and conclusions, and in judgment of court were calculated to mislead, *held* properly excluded.

**6. Trial ⊕⇒60(1)—In action for damages to land, exhibits of insects found thereon held properly excluded.**

In action for damage to lands, orchards, and crops from smelter smokes, exhibits, consisting of perhaps 100 insects said to be found on the lands, *held* properly excluded until evidence of damage done by them was produced.

**7. Nuisance ⊕⇒54—Instruction to resolve doubt as to amount of damages against defendants held not reversible error.**

In action against two defendants for damage to lands from smelter smokes, instruction that uncertainty in respect to amount of damages would be so far resolved against defendants, who are responsible for the difficulty, that the award would be reasonably likely to embrace all damages suffered and proven by plaintiffs *held* not reversible error.

In Equity.  Consolidated actions by W. A. Jordan and others against the United Verde Copper Company and against the United Verde Extension Mining Company. On motion for new trials after verdicts for plaintiffs.  Motions denied.

Robert E. Morrison and Louis H. Bunte, both of Prescott, Ariz., for plaintiffs.

Anderson, Gale & Miller, of Prescott, Ariz., and Clifton Mathews, of Globe, Ariz., for defendant United Verde Copper Co.

Cornick & Crable, of Prescott, Ariz., E. S. Clark, of Phoenix, Ariz., and John M. Ross, of Bisbee, Ariz., for defendant United Verde Extension Mining Co.

BOURQUIN, District Judge.  In both actions plaintiffs allege their lands, orchards, and crops have been damaged in the same time and amount by defendants' smelter smokes.  Consolidated and tried, the separate verdicts are against defendants for like amounts, one-third the total claimed, and they move for new trials.

In various of the proceedings three judges severally participated, and of course errors are assigned against them all.  The writer deals with only those imputed to him.  The actions are commonplace in nuisance, trespass, and damages, wherein the material facts are simple and the law is elementary, settled, and clear. In so far as grounds asserted for new trial merit consideration, they are sufficiently indicated in the following.

[1] Defendants' justification of their trespasses, for that they pursue a lawful business in ordinary course, is neither material nor proven. To whatever extent is judicial sanction for the arrogant attitude that therein is no liability for consequences to others, that unjust doctrine is repudiated in Arizona, and also by the Supreme Court even in respect to public utilities. Arizona Copper Co. v. Gillespie, 12 Ariz. 190, 100 P. 465; Id., 230 U. S. 46, 33 S. Ct. 1004, 57 L. Ed. 1384; Richards v. Wash. Terminal Co., 233 U. S. 553, 34 S. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887.

And if defendants conduct their operations in conformity to what is ordinary and usual in the present-day science of smelting, they have studiously refrained from their burden and duty to disclose the fact in this trial. The evidence without conflict is ample to sustain the finding that defendants' smokes damaged plaintiffs. Not only did defendant mining company's chief expert also thus testify, but defendants' counsel conceded it in argument to the jury, and to the court's instructions accordingly is no exception.

So is the evidence ample to sustain the amount and apportionment of damages, the jury determining all conflict in the first, and exercising a sound discretion in the last. To detail it would serve no useful purpose. The cause of the damages was not uncertain, and the jury was instructed, as usual, that upon all facts and circumstances in evidence, and inferences reasonably therefrom, it would to the best of its judgment and as fair and reasonable men (1) determine the total damages, and (2) apportion them between defendants. These are the rules in cases of concurring causes as in all others. See cases, 17 C. Jur. 740, 756–760; 29 Cyc. 487, 498; 1 Thomp. Neg. § 76.

[2] Defendants' contention that apportionment is mere guesswork, and so neither of them should be held for more than nominal damages, is a vicious doctrine, calculated to encourage trespass and to inflict grave injustice, a fitting sequel to their attitude first aforesaid, if not also the former's inspiration. That it has some support in authority is not to the latter's credit, and serves to remind once more that literally "authority can be found for anything." Its fallacy and vice are well exposed by Thompson, viz:

"This rule leads to this grossly unjust result: That where two wrongdoers, not acting in concert, inflict a wrong on a person, each contributing to some of the dam-

9 F.(2d)—10

ages, but under such circumstances that the damages cannot be apportioned between them, the injured person cannot recover any damages of either. Whereas, by analogy to the doctrine of confusion of goods, he ought to be allowed to recover his full damages from either, unless the one against whom his action is brought can show that a definite proportion of them was produced by the other wrongdoer, and the burden of showing this ought to be on him. Under the California rule it is easy for a person to commit a wrong and escape civil liability for it, by procuring some one else to do a wrong which enhances the damage done to the injured person, while avoiding the appearance of acting in concert."

See 1 Thomp. Neg. § 76.

As matter of fact, the evidence would warrant a verdict for full or all damages against each defendant, but for which plaintiffs could have but one satisfaction. It is reasonably probable that, had but one of defendants operated, plaintiffs' damages would have been the same.

The evidence is that the defendant copper company's smelter of two smokestacks is about 4½ miles northerly of plaintiffs' lands, and defendant mining company's smelter of one smokestack is about 1½ miles in the same direction from the lands; that both operated during the time of injury, and both emitted large volumes of sulphurous smokes, that separately and together rolled down upon and over the lands, and burned, bleached, withered, and destroyed orchards and crops thereon. Of course there can be no exact apportionment; but the wrongdoers are the defendants, they committed the trespasses, they created the nuisances, the cases and the difficulty, not plaintiffs, and they must bear any the embarrassments in the matter of proof. Moreover, these defendants well might be held joint tort-feasors.

If ostensibly operating independently, both knew they were wrongfully and contemporaneously casting smokes separately and in combination upon plaintiffs' lands, to the latter's damage, and undoubtedly both were encouraged by hope of escape from liability by reason of the doctrine to which both now appeal. As Thompson suggests in his text aforesaid, from this situation, tacit understanding, aiding, abetting, conspiracy well might be deduced.

But whether Thompson's rule applies, or that either defendant's trespasses are responsible for all damages, the separate verdicts are in sound discretion and warrant-

ed. The jury resolved the problem even as when compelled to segregate damages by trespass upon a person from those due to disease, or from those due to his subsequent neglect or failure to mitigate, or due to his contributory negligence, or as in cases of ships in collision, or the like.

[3] Amongst other things, the jury was instructed that defendants knew and could have disclosed the content of their ores and smokes, and, they having failed to disclose either, the jury might infer that both were of highly evil quality. This, in analogy to the "ring and stone" case, and for that he who possesses, and does not produce, evidence of higher quality, subjects himself to the presumption that it would be adverse if produced. The principles are elementary, and to cite them is enough. Moreover, the evidence clear that the smokes damaged plaintiffs, and the jury instructed to award only compensatory damages, it is a matter of indifference what was the precise content and quality of ores and smokes.

[4] In the course of the instructions the court found occasion to advise the jury that defendants are not charitable institutions, are profit-making concerns, which include in the price of the product by society paid all the costs including damages by them paid; but that this should not affect the jury's duty to award damages to the extent proven by plaintiffs and no more. The moving cause was the nature of argument for the defense, in material part an insidious appeal to the jury to favor defendants because of their economic value to the state and community from which the jury was drawn, because they were established there before plaintiffs were, because they afforded plaintiffs (and the jury?) their best markets, because their operations during the damages inflicted were a community blessing, because the popular vote would be for defendants, because to that community their smokes really were sweet perfumes of Arabia the blest, and, like base incitation of sordid emotions, calculated to impair the fidelity of the jury, insulting to its intelligence, contemptuous to the court, and offensive to justice.

Although plaintiffs' counsel made no objection, the court, which always is responsible for righteous trials, was bound to and did in the instructions, advise the jury of the true character and import of the said argument, and to frustrate its purpose.

[5, 6] Certain maps and other exhibits offered by defendant mining company were properly excluded. They were more or less collectively offered, in the judgment of the court were calculated to confuse, to exaggerate unimportant detail, and to mislead. Some were immaterial, and some were laden with unverified narrative, opinions, and conclusions. It was not the court's duty to segregate the competent. Of some these exhibits the defense first proceeded to "identify" and display a series of perhaps 100 of insects said to be found upon the lands, but without evidence of damage by them. After some 40 thus virtually introduced, the court, apprehensive of their cumulative effect to the prejudice of plaintiffs, even though not by the defense shown to have inflicted damage and formally introduced, of its own motion suspended further such identification until evidence of damage was produced. Of only a small number was any such evidence presented. [7] The jury was properly instructed that the uncertainty in respect to the amount of plaintiffs' damages would be so far resolved against defendants, who are responsible for the difficulty, that the award would be reasonably likely to embrace all damages suffered and proven by plaintiffs, though therein was some slight encroachment upon defendants' territory in the twilight zone. This, too, is in analogy to confusion of goods, and is sustained by principle and authority. See cases, 17 C. Jur. 756–760; 2 Shear. & Red. Neg. (4th Ed.) § 740; 3 Suth. Dam. (2d Ed.) § 1028.

The trial was without error prejudicial to defendants, the verdicts are well warranted, and new trial is denied.